PETER VERNIERO
Attorney General of New Jersey
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 093
Trenton, N.J. 08625-0093
Attorney for Plaintiffs

**FILED**

**OCT 19 1998**

AT 8:30 ................ M
WILLIAM T. WALSH
CLERK

By:  Mary Ellen Halloran, Esq. (MH 5121)
     Deputy Attorney General
     (609) 984-4654


UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE


| | | |
|---|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; and ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND; | : | Hon. (WHW) , U.S.D.J. |
| | : | Civ. Action No. 98cv4781 |
| | : | |
| Plaintiffs, | : | |
| | : | COMPLAINT |
| v. | : | |
| AMERICAN THERMOPLASTICS CORP.; BECKMAN INSTRUMENTS, INC., a/k/a BECKMAN COULTER, INC.; CADILLAC PLASTICS GROUP, INC., formerly known as DAY INTERNATIONAL CORPORATION; CHEMICAL WASTE MANAGEMENT, INC. a/k/a CWM CHEMICAL SERVICES, INC; CHESTER HILLS, INC.; CHRYSLER CORPORATION; COMPACTION SYSTEMS CORPORATION; COMPACTION SYSTEMS CORPORATION OF CONNECTICUT, INC.; COMPTON PRESS, INC.; CONNECTICUT RESOURCE RECOVERY AUTHORITY, INC.; EAGLE INDUSTRIES, INC.; EASTERN WASTE OF NEW JERSEY, INC; EMERSON QUIET KOOL CORPORATION; | : : : : : : : : | |

FALCON MANUFACTURING, INC.;          :
JOHN C. FILIBERTO, in his
individual capacity; JOSEPH B.       :
FILIBERTO, in his individual
capacity; J. FILIBERTO SANITATION, :
INC.; FLAIR CLEANERS OF MORRISTOWN,
INC.; GARBCO ASSOCIATES, INC.;       :
JAMES P. HORAN, INC.; HOWMET
CORPORATION a/k/a HOWMET TURBINE     :
COMPONENTS CORPORATION; RAYONIER,
INC., formerly known as ITT          :
RAYONIER, INC.; KEUFFEL & ESSER
COMPANY; MARS, INC.; THE MENNEN      :
COMPANY; OCCIDENTAL PETROLEUM
CORPORATION; POLICASTRO SANITATION, :
INC.; PUBLIC SERVICE ELECTRIC
& GAS COMPANY; WARNER LAMBERT        :
COMPANY, INC.; and WASTE
MANAGEMENT OF NORTH JERSEY, INC.;    :

        Defendants.          :


        Plaintiffs  New  Jersey  Department  of  Environmental
Protection  ("DEP"),  and  the  Administrator,  New  Jersey  Spill
Compensation Fund ("Administrator"), having their principal offices
at 401 East State Street in the City of Trenton, County of Mercer,
State of New Jersey, by way of Complaint against the above named
defendants, say:



## STATEMENT OF THE CASE

- 2 -

1.    This is a civil action brought pursuant to the
Comprehensive Environmental Response, Compensation, and Liability
Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and
Reauthorization Act of 1986 ("SARA") (collectively referred to as
"CERCLA"), 42 U.S.C.A. §§9601, et seq., specifically Sections
107(a) and 113(g) of CERCLA, 42 U.S.C.A. §§9607(a) and 9613(g), and
pursuant to the New Jersey Spill Compensation and Control Act (the
"Spill Act"), N.J.S.A. 58:10-23.11 et seq.; the Sanitary Landfill
Facility Closure and Contingency Fund Act, N.J.S.A. 13:1E-100 et
seq.; and the Water Pollution Control Act, N.J.S.A. 58:10A-1 et
seq.    Plaintiffs seek to recover from the defendants the costs
incurred, and to be incurred, in response to the release and
discharge, or threatened release and discharge, of hazardous
substances at the Combe Fill South Superfund site located in
Chester and Washington Townships,  Morris County, New Jersey (the
"Combe Fill South site" or the "Site"). Under the above-referenced
state statutes, plaintiff DEP also seeks to recover from defendants
all damages incurred, and to be incurred, in connection with the
sanitary landfill located at the Combe Fill South site.  Plaintiffs
also seek, under the above-referenced state statutes, to recover
from the defendants damages, including reasonable assessment costs,
for injury to, destruction of, or loss of any natural resource

- 3 -

resulting from the release or threatened release of hazardous substances at the Combe Fill South site and/or the operation or closure of the landfill at the Combe Fill South site.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over the subject matter of this action pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C.A. §§9607(a) and 9613(b), and 28 U.S.C.A. §1331.

3.    Venue is proper in this district pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C.A. §§9607(a) and 9613(b), and 28 U.S.C.A. §1391, because the release or threatened release of hazardous substances giving rise to the plaintiffs' claims occurred in this judicial district.

## THE PARTIES

4.    Plaintiff DEP is a principal department within the Executive Branch of State government and is vested with the authority to conserve natural resources, protect the environment, prevent pollution of the State of New Jersey, and protect the health, safety and welfare of the citizenry of this State. N.J.S.A. 13:1D-9.

5.    Plaintiff Administrator is the chief executive officer of the New Jersey Spill Compensation Fund ("New Jersey Spill Fund" or the "Spill Fund") and was so appointed pursuant to

- 4 -

the New Jersey Spill Compensation and Control Act, specifically
N.J.S.A. 58:10-23.11j. As chief executive officer of the New
Jersey Spill Fund, plaintiff Administrator is authorized, inter
alia, to approve and make payments for any cleanup and removal
costs incurred by plaintiff, N.J.S.A. 58:10-23.11f.c. and d.;
certify the amount of any claim to be paid from the Spill Fund,
N.J.S.A. 58:10-23.11j.d.; and to seek satisfaction of all costs
and damages paid from the Fund, N.J.S.A. 58:10-23.11q.

6. Defendant American Thermoplastics Corporation
("American Thermoplastics") is a corporation organized under the
laws of Delaware with its principal office located in Houston,
Texas. At various times, American Thermoplastics generated wastes
containing hazardous substances which were transported to and
disposed of at the Site. American Thermoplastics is a wholly-owned
subsidiary of Phillips Petroleum Company.

7. Defendant Beckman Instruments, Inc. ("Beckman"),
also known as Beckman Coulter, Inc. is a corporation organized
under the laws of Delaware whose principal office is located in
Fullerton, California. Beckman's former Cedar Grove, New Jersey
facility generated hazardous substances which were transported to
the Site by hauler R & R Sanitation Services, Inc. and discharged
onto the grounds of the Site.

- 5 -

8.    Cadillac Plastics Group, Inc., formerly known as Day International Corporation ("Day"), is a corporation organized under the laws of Delaware and whose principal office is located in Cleveland, Ohio. Day was formerly known as Dayco Corporation, whose National Hose division, formerly of Dover, New Jersey, generated wastes containing hazardous substances which in or about 1978 and/or 1979 were transported to and disposed of at the Site.

9.    Chemical Waste Management, Inc. ("CWM"), also known as CWM Chemical Services, Inc., is a corporation organized under the laws of Delaware with its principal office located in Oak Brook, Illinois.   CWM is the successor to R & R Sanitation Services, Inc., formerly of Mount Freedom, New Jersey, who at various times transported and disposed of materials containing hazardous substances at the Site. CWM is also the successor to Carl Gulick, Inc., who also at various times transported and disposed of materials containing hazardous substances at the site. CWM was formerly known as SCA Chemical Services from 1980 to 1988, as SCA Chemical Waste Services from 1978 to 1980, and as Chem-Trol Pollution Services Inc. prior to 1978.   Carl Gulick, Inc., later became or was taken over by R & R Sanitation. R & R Sanitation was a wholly-owned subsidiary of SCA Services, Inc. from 1973 to 1974 and was a division of Chem-Trol Pollution Services, Inc., a wholly-

- 6 -

owned subsidiary of SCA Services, Inc., from 1974 to 1975.   In 1975, R & R Sanitation's assets were transferred to the Earthline Corporation, which traded as a division of SCA Chemical Services until Earthline's dissolution in 1988.   On information and belief, CWM has succeeded to the liabilities of R & R Sanitation and Carl Gulick, Inc., with respect to this action.

10.   Chester Hills, Inc. ("Chester Hills"), also known as Chester Hills Company, was a corporation organized under the laws of New Jersey with its principal office in Chester, New Jersey. Chester Hills, Inc. was the owner and operator of the Site from 1951 to 1978 when it sold the site to Combe Fill Corporation. During its ownership and operation of the Combe Fill South site, Chester Hills, Inc. accepted hazardous substances for disposal at the Site.

11.   Chrysler Corporation is a corporation organized under the laws of Delaware with its principal office located in Auburn Hills, Michigan.   Chrysler Corporation is the successor entity to and is responsible for the liabilities of Chrysler Plastics Products Corporation ("Chrysler Plastics") with regard to this matter.   Chrysler Plastics generated wastes containing hazardous substances from its facility in Parsippany, New Jersey

- 7 -

between 1968 to 1972. These wastes were transported and disposed of at the Site.

12. Compaction Systems Corporation (a/k/a Compaction Systems Corporation of New Jersey) ("Compaction") is a corporation organized under the laws of New Jersey with its main business office located in the Bronx, New York. Compaction operated the Site from approximately 1978 until it closed as a landfill in 1981. During that period, hazardous substances were accepted by Compaction for disposal at the Site.

13. Compaction Systems Corporation of Connecticut, Inc. ("Compaction-Connecticut"), formerly known as Compaction Systems Corporation of Bridgeport, is a corporation organized under the laws of New Jersey. At various times between 1978 and 1981 Compaction of Bridgeport, as it was then known, transported materials containing hazardous substances and disposed of them at the Site.

14. Compton Press, Inc. is a corporation formerly organized under the laws of New Jersey whose principal office was located in Morris Plains, New Jersey. At various times, Compton Press, Inc. generated wastes containing hazardous substances which were transported to and disposed of at the Site.

- 8 -

15.     Connecticut Resource Recovery Authority, Inc. ("CRRA") is a corporation organized under the laws of Connecticut with its principal office located in Bridgeport, Connecticut. At various times between 1978 and 1981, CRRA generated wastes containing hazardous substances which were transported to and disposed of at the Site.

16.     Eagle Industries, Inc. ("Eagle"), is a corporation organized under the laws of Delaware and whose principal place of business is Chicago, Illinois. Eagle acquired the assets and liabilities of Falcon Manufacturing, Inc., which was formerly known as the Jepson Corporation. The Jepson Corporation's Emerson Quiet Kool division generated wastes containing hazardous substances which were transported to and disposed of at the Site. Upon information and belief, Eagle has succeeded to the liabilities of Emerson Quiet Kool with respect to this action.

17.     Eastern Waste of NJ, Inc., ("Eastern Waste") is a corporation organized under the laws of New Jersey with its principal office located in Hoboken, New Jersey. Upon information and belief, Eastern Waste is the successor to the liabilities of Frank Fenimore, Inc., who transported and disposed of hazardous substances at the Site from 1979 through 1981. Frank Fenimore,

- 9 -

Inc., was acquired or otherwise succeeded to by West Milford Haulage, which was later acquired by defendant Eastern Waste.

18.   Emerson Quiet Kool Corporation is a corporation organized under the laws of Delaware with its principal office located in Whitehouse, New Jersey.   Emerson Quiet Kool, the predecessor to Emerson Quiet Kool Corporation, was formerly a division of the Jepson Corporation (now known as Falcon Manufacturing, Inc.).   At various times, Emerson Quiet Kool generated wastes containing hazardous substances from its Dover facility which were transported to and disposed of at the Site. Subsequently, the assets and business of Emerson Quiet Kool were sold by the Jepson Corporation to the Fedders Corporation.   Emerson Quiet Kool then became known as Emerson Quiet Kool Corporation. Currently, Emerson Quiet Kool Corporation is a subsidiary of Fedders North America, Inc.   Upon information and belief, Emerson Quiet Kool Corporation succeeded to the liabilities of the former Emerson Quiet Kool.

19.   Falcon Manufacturing, Inc. ("Falcon'), is a corporation organized under the laws of Delaware with its principal office located in Chicago, Illinois.   Falcon was formerly known as the Jepson Corporation, of which Emerson Quiet Kool of Dover was a

- 10 -

division. Upon information and belief, Falcon succeeded to the liabilities of the original Emerson Quiet Kool.

20. John C. Filiberto is an individual and former secretary/treasurer of defendant Chester Hills, Inc., the former owner and operator of the Site. During some or all of its years of operation as Chester Hills, Inc., John C. Filiberto was personally and actively involved in the operation, control and management of the Site.

21. Joseph B. Filiberto is an individual and former president of defendant Chester Hills, Inc., the former owner and operator of the Site. During some or all of its years of operation as Chester Hills, Inc., Joseph B. Filiberto was personally and actively involved in the operation, control and management of the Site.

22. J. Filiberto Sanitation, Inc. ("Filiberto Sanitation"), is a corporation formerly organized under the laws of New Jersey with its principal place of business located next to the Combe Fill South site in Chester Township. Filiberto Sanitation operated the Site during all or some of the time during which it was owned by defendant Chester Hills, Inc. At various times during this period Filiberto Sanitation also transported materials containing hazardous substances to the Site for disposal.

- 11 -

23. Flair Cleaners of Morristown, Inc. ("Flair Cleaners"), is a corporation organized under the laws of New Jersey with its principal office located in Morristown, New Jersey. Flair Cleaners generated wastes containing hazardous substances which were transported to and disposed of at the Site.

24. Garbco Associates, Inc. ("Garbco"), is a corporation organized under the laws of New Jersey. Garbco, formerly known as J. Filiberto Sanitation, Inc., transported, at various times, wastes containing hazardous substances to the Site for disposal. J. Filiberto Sanitation operated the Site during all or some of the time during which it was owned by defendant Chester Hills, Inc.

25. James P. Horan, Inc. ("Horan") is a corporation organized under the laws of New Jersey and formerly located in Elmwood Park, New Jersey. Horan was engaged in the construction business and in 1979 generated a mixture of oil and water which was transported to and discharged onto the roads of the Site. Oil is a petroleum product which is listed as a hazardous substance under N.J.S.A. 58:10-23.11b.

26. Howmet Corporation ("Howmet"), a/k/a Howmet Turbine Components Corporation, is a corporation organized under the laws of Delaware with its principal office located in Greenwich,

- 12 -

Connecticut. Howmet generated wastes containing hazardous substances which were transported to and disposed of at the Site.

27. Rayonier, Inc. ("Rayonier"), formerly known as ITT Rayonier, Inc., is a corporation organized under the laws of Delaware with its principal office located in Connecticut. ITT Rayonier, Inc. changed its name to Rayonier, Inc. in or about 1994. Thus, Rayonier has succeeded to the liabilities of ITT Rayonier, Inc. with respect to this action. Rayonier's former Whippany, New Jersey facility generated hazardous substances which were transported to and disposed of at the Site.

28. Keuffel & Esser Company ("Keuffel & Esser"), a subsidiary of Azon Corporation, is a company organized under the laws of California with its principal office located in New Jersey. Keuffel & Esser's former Rockaway, New Jersey facility, at various times between 1967 and 1981, generated wastes containing hazardous substances which were transported to and disposed of at the Site.

29. Mars, Inc. ("Mars") is a corporation organized under the laws of Delaware with its principal office located in McLean, Virginia. Through its subsidiary located in Hackettstown, New Jersey, Mars generated wastes containing hazardous substances which were transported to and disposed of at the Site.

- 13 -

30. The Mennen Company ("Mennen") is a corporation organized under the laws of Nevada with its principal office located in Morristown, New Jersey. At various times between 1968 and 1981, Mennen generated wastes containing hazardous substances which were transported to and disposed of at the Site.

31. Occidental Petroleum Corporation ("Occidental") is a corporation organized under the laws of Delaware with its principal office located in California. Based upon information and belief, at all times relevant hereto, Occidental Resource Recovery Systems, Inc. ("ORRSI") was a wholly-owned subsidiary of Occidental. Occidental, ORRSI, and others were partners in a joint venture named or known as CEA-OXY Resource Recovery Associates ("CEA-OXY"). CEA-OXY collected, generated, and transported wastes containing hazardous substances to the Site. Furthermore, Occidental is the successor to CEA-OXY and is responsible for the liabilities of CEA-OXY.

32. Policastro Sanitation, Inc. ("Policastro"), is a corporation organized under the laws of New Jersey, whose principal office was located in Parsippany, New Jersey. At various times Policastro transported wastes containing hazardous substances on behalf of defendant Compton Press to the site.

- 14 -

33.   Public Service Electric & Gas Company ("PSE&G") is a corporation organized under the laws of New Jersey with its principal office located in Newark, New Jersey.   In 1979, PSE&G's Wayne, New Jersey substation generated a waste oil and water mixture which was transported by R&R Sanitation Services, Inc. to the Site.   The waste oil and water mixture was applied to the roads of the Site for dust control.   Oil is a petroleum product which is listed as a hazardous substance under N.J.S.A. 58:10-23.11b.

34.   Warner Lambert Company, Inc. ("Warner Lambert") is a corporation organized under the laws of Delaware with its principal office located in Morris Plains, New Jersey.   From approximately 1967 to 1978, Warner Lambert generated wastes containing hazardous substances which were transported to and disposed of at the Site.

35.   Waste Management of North Jersey, Inc. ("WMNJ") is a corporation incorporated under the laws of Delaware with its principal office in Chester, New Jersey.   In 1990, WMNJ, along with Waste Management Leasing, Inc., purchased the assets, property and business of J. Filiberto Sanitation, Inc. ("Filiberto Sanitation"), who at various times transported and disposed of wastes containing hazardous substances at the Site.   WMNJ then continued Filiberto

Sanitation's waste hauling operations. Upon information and belief, WMNJ is a successor to the liabilities of Filiberto Sanitation.

## GENERAL ALLEGATIONS

36.   The Combe Fill South site comprises approximately 65 acres of real property located on Parker Road, in Chester and Washington Townships, Morris County, New Jersey, said property being also known and designated as Block 37, Lots 15, 16, 16.01 and 16.03 on the Tax Map of Washington Township and Block 17, Lot 7 on the Tax Map of Chester Township, and all other areas where "hazardous substances," as defined in Section 101(14) of CERCLA, 42 U.S.C.A. §9601(14), and the Spill Act, N.J.S.A. 58:10-23.11b., have come to be located.

37.   In or about 1948 through November 1981 materials that were, or contained, hazardous substances were transported to the Combe Fill South site and "disposed of" within the meaning of Section 101(29) of CERCLA, 42 U.S.C.A. §9601(29).

38.   On various occasions from May 29, 1973 through 1983, plaintiff and/or the United States Environmental Protection Agency ("USEPA") investigated the Combe Fill South site and observed fluid waste with a sewage odor flowing from an overflow pipe. Downstream from a leachate holding pond at the Site, a trout brook was polluted from seepage emanating from the leachate holding pond and

- 16 -

a leachate collection basin. Site runoff, leachate and other liquids entered the fractured bedrock at the Site and migrated down to the water table. During the lifetime of the Site numerous wastes were accepted at the Combe Fill South site which included but are not limited to: typical household wastes; pharmaceutical products; calcium oxide, crushed containers of paints and dyes; aerosol product canisters; industrial wastes; dead animals; sewage sludge; septic tank wastes; chemicals; and waste oils. Samples taken from the Site showed significant organic contamination of groundwater, soil and surface water.

39. The Combe Fill South site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C.A. §9601(9).

40. There have been, and continue to be, "releases" or "threatened releases" of hazardous substances within the meaning of Sections 101(14) and 101(22) of CERCLA, 42 U.S.C.A. §§9601(14) and (22) at the Site.

41. On September 8, 1983, the United States Environmental Protection Agency ("USEPA") placed the Combe Fill South site on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B. The NPL, which was established pursuant to Section 105(a) of CERCLA, 42 U.S.C.A. §9605(a), is a list promulgated by USEPA of hazardous waste sites that pose the

- 17 -

greatest threat to the public health, safety and welfare, or the environment.

42. On November 21, 1983, USEPA entered into a Cooperative Agreement with plaintiff DEP under the authority of Section 104 of CERCLA, 42 U.S.C.A. §9604, making CERCLA-funded money available for plaintiff DEP to conduct a remedial investigation and feasibility study ("RI/FS") of the Site.

43. From 1984 to 1986, plaintiff DEP performed a remedial investigation and feasibility study of the Combe Fill South site pursuant to Section 104 of CERCLA, 42 U.S.C.A. §9604. The RI/FS was intended to identify the types, quantities and locations of contaminants in the soil, groundwater and surface water at and underlying the Combe Fill South site.

44. On September 29, 1986, USEPA issued a Record of Decision ("September 29, 1986 ROD") for the Combe Fill South site, in which USEPA selected the preferred remedy to address the contaminated soil, groundwater and surface water at and underlying the Site.

45. The remedy selected in the September 29, 1986 ROD primarily provides for: an alternative water supply for affected residences; capping the 65-acre landfill in accordance with the Resource Conservation and Recovery Act, 42 U.S.C.A. §§6901 to -

- 18 -

6992; an active collection and treatment system for landfill gases; pumping and on-site treatment of shallow groundwater and leachate; surface water controls to accommodate seasonal precipitation and storm run-off; security fencing to restrict Site access; appropriate environmental monitoring to ensure the effectiveness of the remedial action; and a supplemental feasibility study to evaluate the need for remediation of the deep aquifer.

46. In or about 1992, USEPA and plaintiff began implementing the remedy selected in the September 29, 1986 ROD using public funds.

47. Plaintiff DEP has engaged, and will continue to engage in, remedial activities concerning the Combe Fill South site.

48. Plaintiff Administrator has certified, and will continue to certify, for payment, valid claims made against the New Jersey Spill Fund and, further, has approved, and will continue to approve, other appropriations from the Spill Fund for the remediation of the Site.

49. The costs incurred, and to be incurred, by plaintiffs in connection with the Combe Fill South site are "response costs" within the meaning of Sections 101(25) and 107(a)(4)(A) of CERCLA, 42 U.S.C.A. §§9601(25) and 9607(a)(4)(A),

said response costs being not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. Parts 300-399.

50. Each defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C.A. §9601(21).

51. Defendants Chester Hills, Inc., Compaction Systems Corporation, John C. Filiberto, Joseph B. Filiberto, J. Filiberto Sanitation, Garbco Associates, Inc., and Waste Management of North Jersey, Inc., are persons who were the "owners" or "operators" of a facility within the meaning of Sections 101(20) and 107(a)(1) of CERCLA, 42 U.S.C.A. §§9601(20) and 9607(a)(1).

52. Defendants American Thermoplastics Corp., Beckman Instruments, Cadillac Plastics Group, Chrysler Corporation, Compton Press, Connecticut Resource Recovery Associates, Eagle Industries, Emerson Quiet Kool, Falcon Manufacturing, Flair Cleaners, James P. Horan, Howmet Corporation, Rayonier, Keuffel & Esser, Mars, Mennen, Occidental Petroleum, Public Service Electric & Gas, and Warner Lambert are persons who by contract, agreement, or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such persons, by any other party or entity, at any facility or incineration vessel owned or operated

- 20 -

by another party or entity and containing such hazardous substances, within the meaning of Section 107(a)(3) of CERCLA, 42 U.S.C.A. §9607(a)(3).

53.   Defendants Chemical Waste Management, Compaction Systems Corporation of Connecticut, Eastern Waste, Filiberto Sanitation, Garbco Associates, Policastro and Waste Management of North Jersey are persons who accepted hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such persons, from which there is a release, or a threatened release, of a hazardous substance which causes the incurrence of response costs within the meaning of Section 107(a)(4) of CERCLA, 42 U.S.C.A. §9607(a)(4).

## CLAIM FOR RELIEF

54.   The plaintiffs repeat and reallege the allegations of paragraphs 1 through 52 above as though fully set forth in their entirety herein.

55.   The Combe Fill South site is a facility at which there have been, and continue to be, releases or threatened releases of hazardous substances.

56.   As a result of the release or threatened release of hazardous substances at the Combe Fill South site, plaintiffs have

- 21 -

incurred, and will incur, response costs in connection with the Site, said response costs being not inconsistent with the NCP.

57. As the owners and/or operators of the Combe Fill South site, defendants Chester Hills, Inc., Compaction Systems Corporation, John C. Filiberto, Joseph B. Filiberto, J. Filiberto Sanitation, Garbco Associates, and Waste Management of North Jersey are persons who, pursuant to Section 107(a)(1)(A) of CERCLA, 42 U.S.C.A. §9607(a)(1)(A), are liable to plaintiffs for all response costs incurred, and to be incurred, by plaintiffs in connection with the Combe Fill South site.

58. As persons who owned and/or operated the Combe Fill South site at the time hazardous substances were disposed of, the above defendants are persons who, pursuant to Section 107(a)(2)(A) of CERCLA, 42 U.S.C.A. §9607(a)(2)(A), are liable to plaintiffs and Administrator for all response costs incurred, and to be incurred, by plaintiffs in connection with the Combe Fill South site.

59. As persons who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment at the Combe Fill South site of hazardous substances owned or possessed by such persons, by any other party or entity, at any facility or incineration vessel

- 22 -

owned or operated by another party or entity and containing such hazardous substances, defendants American Thermoplastics Corp., Beckman Instruments, Cadillac Plastics Group, Chrysler Corporation, Compton Press, Connecticut Resource Recovery Associates, Eagle Industries, Emerson Quiet Kool, Falcon Manufacturing, Flair Cleaners of Morristown, James P. Horan, Howmet Corporation, Rayonier, Keuffel & Esser, Mars, Mennen, Occidental Petroleum, Public Service Electric & Gas, and Warner Lambert are persons who, pursuant to Section 107(a)(3)(A) of CERCLA, 42 U.S.C.A. §9607(a)(3)(A), are liable to plaintiffs for all response costs incurred, and to be incurred, by plaintiffs in connection with the Combe Fill South site.

60. As persons who by contract, agreement or otherwise accepted for transport to the Site, which they selected, from which there has been, and continues to be, a release or threatened release of hazardous substances, the defendants Chemical Waste Management, Compaction Systems Corporation of Connecticut, Eastern Waste, J. Filiberto Sanitation, Garbco Associates, Policastro Sanitation and Waste Management of North Jersey are persons who, pursuant to Section 107(a)(4)(A) of CERCLA, 42 U.S.C.A. §9607(a)(4)(A), are liable to plaintiffs for all response costs

- 23 -

incurred, and to be incurred, by plaintiffs in connection with the Combe Fill South site.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs New Jersey Department of Environmental Protection and the Administrator, New Jersey Spill Compensation Fund, pray that this Court:

a.   Order the defendants to reimburse plaintiffs DEP and Administrator for all response costs incurred by the plaintiffs in connection with the release or threatened release of hazardous substances from the Combe Fill South site, plus applicable interest;

b.   Enter declaratory judgment against the defendants, for all response costs to be incurred by plaintiffs DEP and Administrator in connection with the release or threatened release of hazardous substances at the Combe Fill South site;

c.   Award plaintiffs their costs and fees in this action; and

d.   Award plaintiffs such other relief as the Court deems appropriate.

## PENDANT STATE CLAIMS

### CLAIMS UNDER THE SPILL ACT

61. The plaintiffs repeat and reallege the allegations of paragraphs 1 through 60 above as though fully set forth in their entirety herein.

62. In or about 1948 through November 1981, materials that were, or contained, hazardous substances were "discharged" at the Site within the meaning of N.J.S.A. 58:10-23.11b. and N.J.S.A. 58:10-23.11f.a.(1).

63. In or about 1948 through November 1981, materials that were, or contained, hazardous substances were "discharged" at the Site within the meaning of N.J.S.A. 58:10-23.11b. and N.J.S.A. 58:10-23.11f.b.(3).

64. In or about 1948 through November 1981, materials that were, or contained, hazardous substances, were not being satisfactorily stored at the Combe Fill South site within the meaning of N.J.S.A. 58:10-23.11f.b.(2).

65. On or about July 24, 1991, plaintiff DEP issued a Directive and Notice to Insurers ("Directive") to 16 of the above named defendants pursuant to the New Jersey Spill Compensation and Control Act ("Spill Act"), specifically N.J.S.A. 58:10-23.11f.a. The defendants named in this Directive were Beckman Instruments,

- 25 -

CWM Chemical Services, Inc., Chester Hills, Inc., Compaction Systems Corporation, Compaction Systems Corporation of Connecticut, Inc., Compton Press, Inc., Connecticut Resource Recovery Authority, Inc., Frank Fenimore, Inc. (now Eastern Waste), J. Filiberto Sanitation, Inc., Howmet Corporation, Mennen Company, Occidental Petroleum Corporation, Policastro Sanitation, Inc., Public Service Electric & Gas Company, ITT Rayonier (now Rayonier), and Warner Lambert Company. The Directive ordered the defendants to fund the selected remedy in the September 29, 1986 ROD by paying to plaintiff DEP its costs of constructing the selected remedy and administrative oversight. The Directive also ordered the defendants to perform the operation and maintenance of the Site upon completion of the construction.

66. Plaintiff DEP did not receive payment from any defendant named in the July 24, 1991 Spill Act Directive. Consequently, plaintiff DEP began implementing the remedy selected in the September 29, 1986 ROD using public funds.

67. On December 11, 1996, plaintiff DEP issued Spill Act Directive Number 2 for the Site. Directive Number 2 ordered the defendants, pursuant to N.J.S.A. 58:10-23.11f.a., to reimburse plaintiff DEP for past cleanup costs at the Site.

68.     Directive Number 2 also ordered the defendants to perform the operation and maintenance of the Site or pay plaintiff DEP for its costs of operation and maintenance of the Site. Directive Number 2 further ordered the defendants to undertake the restoration of natural resources damaged by hazardous substances at the Site.    The defendants were required to address the natural resource damages resulting from the discharge of hazardous substances at the Site by submitting a Natural Resource Restoration Plan.

69.     The defendants have not undertaken to comply with any of the directives in Directive Number 2.   The defendants have failed to reimburse plaintiffs for past cleanup and removal costs at the Site.  The defendants have failed to undertake the operation and maintenance of the remedy at the site as directed by Directive Number 2 nor have they submitted a Natural Resource Restoration Plan.   Consequently, plaintiff DEP began implementing the operation and maintenance of the Site using public funds.

70.     Hazardous substances have been discharged at the Site within the meaning of N.J.S.A. 58:10-23.11b. and N.J.S.A. 58:10-23.11f.a.(1).

- 27 -

71.    Hazardous substances have been discharged at the Site within the meaning of N.J.S.A. 58:10-23.11b. and N.J.S.A. 58:10-23.11f.b.(3).

72.    Hazardous substances have not been satisfactorily stored or contained at the Combe Fill South site within the meaning of N.J.S.A. 58:10-23.11f.b.(2).

73.    As a result of the discharge and/or unsatisfactory storage or containment of hazardous substances, plaintiffs have engaged, and will continue to engage, in remedial activities concerning the Combe Fill South site including remediation, operation and maintenance and the restoration of natural resources at the Site.

74.    As a result of the discharge and unsatisfactory storage or containment of hazardous substances at the Site, plaintiff Administrator has certified, and will continue to certify, for payment, valid claims made against the Spill Fund and, further, has approved, and will continue to approve, other appropriations as are necessary from the Spill Fund for the remediation of the Site.

75.    The costs incurred, and to be incurred, by plaintiffs in connection with the Site are "cleanup and removal costs" within the meaning of N.J.S.A. 58:10-23.11b., said costs

- 28 -

being, to the greatest extent possible, in accordance with the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. Parts 300 to -399.

76. As a result of the discharge and unsatisfactory storage or containment of hazardous substances at the Site, plaintiff DEP has also incurred, and will continue to incur, the cost of restoring and replacing, where practicable, any natural resource that has been, or will be, damaged or destroyed by the discharge and unsatisfactory storage or containment of hazardous substances at the Combe Fill South site.

77. The defendants are "persons" within the meaning of N.J.S.A. 58:10-23.11b.

78. The defendants are persons who "discharged" hazardous substances at the Site, within the meaning of N.J.S.A. 58:10-23.11b. and N.J.S.A. 58:10-23.11g.c.(1).

79. The defendants are persons "in any way responsible for" the hazardous substances discharged at the Site, within the meaning of N.J.S.A. 58:10-23.11g.c.(1).

80. Pursuant to N.J.S.A. 58:10-23.11g.c., the defendants are strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs incurred or to be incurred by plaintiffs.

- 29 -

81.   By failing to comply with the Spill Act Directives and Notice to Insurers of July 24, 1991 and December 11, 1996, the defendants are persons who, pursuant to N.J.S.A. 58:10-23.11f.a.(1), are liable in an amount equal to three times the cleanup and removal costs incurred, and to be incurred, by plaintiffs DEP and Administrator in connection with the Combe Fill South site.

82.   Pursuant to N.J.S.A. 58:10-23.11u.a.(1)(a) and N.J.S.A. 58:10-23.11u.b., plaintiff DEP may commence a civil action for, singly or in combination, the costs it has incurred for any investigation, cleanup and removal, and for the reasonable costs of preparing and successfully litigating an action under this subsection, N.J.S.A. 58:10-23.11u.b.(2); the cost of restoring or replacing, where practicable, any natural resource damaged or destroyed by a discharge, N.J.S.A. 58:10-23.11u.b.(4); and any other costs incurred pursuant to the Spill Act, N.J.S.A. 58:10-23.11u.b.(5).

83.   Pursuant to N.J.S.A. 58:10-23.11q., plaintiff Administrator shall commence an action for satisfaction of any unreimbursed funds from dischargers or persons in any way responsible for the hazardous substances discharged.

- 30 -

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs New Jersey Department of Environmental Protection and the Administrator, New Jersey Spill Compensation Fund pray that this Court:

a.) Order the defendants to reimburse plaintiffs DEP and Administrator, jointly and severally, without regard to fault, for the cleanup and removal costs incurred by the plaintiffs in connection with the Combe Fill South site, plus applicable interest;

b.) Order the defendants to reimburse plaintiffs DEP and Administrator, jointly and severally, without regard to fault, in an amount equal to three times the cleanup and removal costs incurred by the plaintiffs in connection with the Combe Fill South site;

c.) Order the defendants to reimburse plaintiffs jointly and severally, without regard to fault, for all costs, including assessment costs, incurred to restore and replace, where practicable, any natural resource damaged or destroyed in connection with the Combe Fill South site, plus applicable interest;

- 31 -

d.)  Enter declaratory judgment against the defendants, jointly and severally, without regard to fault, for all cleanup and removal costs to be incurred by plaintiffs in connection with the Combe Fill South site;

e.)  Enter declaratory judgment against the defendants, jointly and severally, without regard to fault, in an amount equal to three times the cleanup and removal costs to be incurred by plaintiffs in connection with the Combe Fill South site;

f.)  Enter declaratory judgment against the defendants, jointly and severally, without regard to fault, for all costs, including assessment costs, to be incurred by plaintiff DEP to restore and replace, where practicable, any natural resource damaged or destroyed in connection with the Combe Fill South site;

g.)  Award plaintiffs their costs and fees in this action; and

h.)  Award plaintiffs such other relief as the Court deems appropriate.

## CLAIMS UNDER THE SANITARY LANDFILL FACILITY CLOSURE AND CONTINGENCY FUND ACT

84.  The plaintiffs repeat and reallege the allegations of paragraphs 1 through 83 above as though fully set forth in their entirety herein.

85.  From 1948 through November 1981, materials that were, or contained, "solid wastes" within the meaning of N.J.S.A. 13:1E-3a., were "disposed of" at the Combe Fill South site within the meaning of N.J.S.A. 13:1E-3c.

86.  Certain of the solid wastes disposed of at the Site were deposited on or in the land as fill for the purpose of permanent disposal or storage for a period exceeding six months, thereby constituting a "sanitary landfill facility" within the meaning of N.J.S.A. 13:1E-3q.

87.  Defendants Chester Hills, Inc., Compaction Systems Corporation, John C. Filiberto, Joseph B. Filiberto, J. Filiberto Sanitation, Inc., Garbco Associates, Inc., and Waste Management of North Jersey, Inc., are persons who "owned" and/or "operated" the sanitary landfill facility located at the Site within the meaning of N.J.S.A. 13:1E-102b.

88.  On September 8, 1981, plaintiff DEP issued an administrative order to Combe Fill Corporation, the owner of the Site at that time.  The administrative order, issued under the authority of the Solid Waste Management Act, N.J.S.A. 13:1E-1, et

- 33 -

seq., directed the Combe Fill Corporation to submit to plaintiff DEP a plan for the closure of the sanitary landfill facility located at the Combe Fill South Site.

89.   In October 1981, Combe Fill Corporation filed a Chapter 7 petition in the United States Bankruptcy Court to liquidate its assets.   Thereafter, the Combe Fill Corporation ceased operations at the Combe Fill South sanitary landfill facility.

90.   Plaintiff DEP has further restored and replaced, and will continue to restore and replace, where possible, any natural resource that has been, or will be, damaged or destroyed by the operation and/or closure of the sanitary landfill facility at the Combe Fill South Site.

91.   Plaintiff DEP has also certified, and will continue to certify, valid claims made against the Sanitary Landfill Facility Closure and Contingency Fund in connection with the operation and/or closure of the sanitary landfill facility at the Combe Fill South site.

92.   Pursuant to N.J.S.A. 13:1E-103, defendants Chester Hills, Inc., Compaction Systems Corporation, John C. Filiberto, Joseph B. Filiberto, J. Filiberto Sanitation, Inc., Garbco Associates, Inc., and Waste Management of North Jersey, Inc., are

liable, jointly and severally, for the proper operation and closure of the sanitary landfill facility, as required by law, and for any damages, either direct or indirect, no matter by whom sustained, proximately resulting from the operation and/or closure of the sanitary landfill facility.

WHEREFORE, plaintiff DEP prays that this Court:

a.)  Order defendants Chester Hills, Inc., Compaction Systems Corporation, John C. Filiberto, Joseph B. Filiberto, J. Filiberto Sanitation, Inc., Garbco Associates, Inc., Waste Management of North Jersey, Inc., to reimburse plaintiff DEP, jointly and severally, for all direct and indirect damages, including any damages paid for from the Sanitary Landfill Facility Closure and Contingency Fund, in connection with the operation and/or closure of the sanitary landfill facility located at the Combe Fill South site, plus applicable interest;

b.)  Enter declaratory judgment against these defendants, jointly and severally, for all direct and indirect damages, including any damages paid for from the Sanitary Landfill Facility Closure and Contingency Fund, to be incurred by plaintiff DEP in connection with the operation and/or closure of the sanitary landfill facility located at the Combe Fill South site, plus applicable interest;

  
c.)   Award plaintiff DEP its costs and fees in this action; and

d.)   Award plaintiff DEP such other relief as the Court deems appropriate.


### CLAIMS UNDER THE WATER POLLUTION CONTROL ACT

The plaintiffs repeat and reallege the allegations of paragraphs 1 through 92 above as though fully set forth in their entirety herein.

93.   At all relevant times, defendant Chester Hills, Inc., Compaction Systems Corporation, J. Filiberto Sanitation, Inc., Garbco Associates, Inc., and Waste Management of North Jersey, Inc., were owners and/or operators of the Combe Fill South site.

94.   During their ownership and operation of the Site, these defendants accepted for disposal at the Site "pollutant[s]" as that term is defined in the Water Pollution Control Act, specifically N.J.S.A. 58:10A-3n.

95.   Pollutants were "discharge[d]" at the Site within the meaning of N.J.S.A. 58:10A-3e.

96.   These defendants are "person[s]" within the meaning of N.J.S.A. 58:10A-3l and N.J.S.A. 58:10A-6a.

- 36 -

97.   During their ownership and/or operation of the Site, these defendants unlawfully discharged pollutants into the groundwater and surface water at the Site in violation of the Water Pollution Control Act, specifically N.J.S.A. 58:10A-6a.

98.   Defendants John C. Filiberto and Joseph B. Filiberto were the secretary/treasurer and president, respectively, of Chester Hills, Inc. when it unlawfully discharged pollutants into the groundwater and surface water at the Site in violation of the Water Pollution Control Act.

99.   Defendants John C. Filiberto and Joseph B. Filiberto are "person[s]" and "responsible corporate official[s]" within the meaning of N.J.S.A. 58:10A-3l and N.J.S.A. 58:10A-6a.

100. As responsible corporate officials of Chester Hills, Inc., defendants John C. Filiberto and Joseph B. Filiberto unlawfully discharged pollutants into the groundwater and surface water at the Site in violation of the Water Pollution Control Act, specifically N.J.S.A. 58:10A-6a.

101. As responsible corporate officials of Chester Hills, Inc., defendants John C. Filiberto and Joseph B. Filiberto had actual responsibility for the conditions at the Site resulting in the violation of the Water Pollution Control Act or were in a

- 37 -

position to prevent the occurrence of the violation of the Water Pollution Control Act but failed to do so.

102. As responsible corporate officials of Chester Hills, Inc., defendants John C. Filiberto and Joseph B. Filiberto were in control of the events that resulted in the violation of the Water Pollution Control Act.

103. As a result of the unlawful discharge of pollutants into the groundwater and surface water at the Combe Fill South site, plaintiff DEP has engaged, and will continue to engage, in enforcement activities at the Site including remediation, operation and maintenance and the restoration of natural resources.

104. Plaintiff DEP has incurred "reasonable costs" within the meaning of N.J.S.A. 58:10A-10c.(3) for the remediation of the groundwater and surface water at the Combe Fill South site as a result of the unlawful discharge of pollutants into the groundwater and surface water at the Site.

105. Plaintiff DEP has incurred "compensatory damages" within the meaning of N.J.S.A. 58:10A-10c.(4) for restoring and replacing, where practicable, any natural resources that have been, or will be, damaged or destroyed by the unlawful discharge of pollutants into the groundwater and surface water at the Combe Fill South site.

106. Pursuant to N.J.S.A. 58:10A-6a. and N.J.S.A. 58:10A-10c.(3), defendants Chester Hills, Inc., Compaction Systems Corporation, J. Filiberto Sanitation, Inc., Garbco Associates, Inc., and Waste Management of North Jersey, Inc., and responsible corporate officials John C. Filiberto and Joseph B. Filiberto are liable for the reasonable costs incurred by plaintiff DEP for removing, correcting or terminating the adverse effects upon water quality resulting from the unauthorized discharge of pollutants into the groundwater and surface water at the Combe Fill South site.

107. Pursuant to N.J.S.A. 58:10A-6a. and N.J.S.A. 58:10A-10c.(4), defendants Chester Hills, Inc., Compaction Systems Corporation, J. Filiberto Sanitation, Inc., Garbco Associates, Inc., Waste Management of North Jersey, Inc., and responsible corporate officials John C. Filiberto and Joseph B. Filiberto are liable to plaintiff DEP for compensatory damages for restoring and replacing, where practicable, the loss or destruction of wildlife, fish or aquatic life, or other natural resources, and for any other actual damages caused by the unauthorized discharge of pollutants into the groundwater and surface water at the Combe Fill South site.

- 39 -

108. Plaintiffs are authorized, pursuant to N.J.S.A. 58:10A-10c., to commence a civil action in Court for appropriate relief for any violation of the Water Pollution Control Act and may include, singly or in combination: reasonable costs incurred for any investigation, inspection or monitoring survey which led to the establishment of a violation of the Water Pollution Control Act, and for the reasonable costs incurred of preparing and litigating the case, N.J.S.A. 58:10A-10c.(2); reasonable costs incurred to remove, correct or terminate adverse effects upon water quality resulting from the unauthorized discharge of pollutants, N.J.S.A. 58:10A-10c.(3); and compensatory damages incurred to restore and replace, where practicable, the loss or destruction of wildlife, fish or aquatic life, or other natural resources, and for any other actual damages caused by an unauthorized discharge of pollutants, N.J.S.A. 58:10A-10c.(4).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff New Jersey Department of Environmental Protection prays that this Court:

a.) Order the defendants Chester Hills, Inc., Compaction Systems Corporation, J. Filiberto Sanitation, Inc., Garbco Associates, Inc., Waste Management of North Jersey, Inc., John C.

- 40 -

Filiberto and Joseph B. Filiberto to reimburse plaintiff DEP for all reasonable costs incurred by plaintiff to remove, correct or terminate the adverse effects upon water quality resulting from the unauthorized discharge of pollutants into the groundwater and surface water at the Combe Fill South site, plus applicable interest;

b.) Order these defendants to reimburse plaintiff for compensatory damages incurred to restore and replace, where practicable, the loss or destruction of natural resources and for any other actual damages caused by the unauthorized discharge of pollutants into the groundwater and surface water at the Combe Fill South site, plus applicable interest;

c.) Enter declaratory judgment against these defendants for all reasonable costs to be incurred by plaintiff DEP for the removal, correction or termination of the adverse effects upon water quality resulting from the unauthorized discharge of pollutants into the groundwater and surface water at the Combe Fill South site;

d.) Enter declaratory judgment against these defendants for all compensatory damages to be incurred by plaintiff to restore and replace, where practicable, the loss or destruction of natural resources at the Site, and for any other actual damages caused by

- 41 -