## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, and ADMINISTRATOR, NEW JERSEY SPILL COMPENSATION FUND<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN THERMOPLASTICS CORP., et al.,<br><br>Defendants. | **OPINION**<br>No. 98-cv-4781 (WHW)(CLW) |

UNITED STATES OF AMERICA,

Plaintiff,

v.

BECKMAN COULTER, INC. f/k/a BECKMAN INSTRUMENTS, INC., et al.,

Defendants.

**Walls, Senior District Judge**

Pending before the Court are two summary-judgment motions. In the first, third-party defendants Carter Day Industries, Inc. ("CDI"), Combe Fill Corporation ("CFC"), and Combustion Equipment Associates, Inc. ("CEA") (collectively, the "Carter Day Parties") move for summary judgment on all counts. ECF No. 1341. In the second, third-party plaintiffs Compaction System Corporation of Connecticut, Inc. ("Compaction-CT") and Compaction Systems Corporation (a New Jersey Corporation) ("Compaction-NJ") (together, "Compaction"), move for partial summary judgment. ECF No. 1342.

1

Also pending are Compaction's motions for estoppel, ECF No. 1343, and spoliation sanctions, ECF No. 1344. For the reasons that follow, the Carter Day Parties' motion is granted, and Compaction's motions are denied.

## **PROCEDURAL HISTORY**

As evidenced by the more than one thousand docket entries, this is a complicated matter with a lengthy procedural history. It involves the allocation of environmental clean-up costs at the Combe Fill South Superfund Site (the "Site"). On October 19, 1998, the New Jersey Department of Environmental Protection ("NJDEP") and the Administrator of the New Jersey Spill Compensation Fund ("Administrator") filed a complaint against Compaction, among many others, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and various New Jersey environmental laws seeking to recover past and future response costs at the Site. ECF No. 1. The next day, the United States filed a separate complaint against Compaction, among many others, seeking to recover clean-up costs at the Site under CERCLA. Civ. No. 98-4812, ECF No. 1. The Court consolidated these actions on March 16, 1999 under civil docket number 98-4781. ECF No. 60.

As part of the consolidated proceedings, Compaction agreed in 2009 to pay the United States Environmental Protection Agency ("USEPA") and NJDEP $11 million as settlement to reimburse those agencies' remediation efforts at the Site. *See* ECF No. 1128 (consent judgment). Compaction accepted an additional $26 million judgment against itself, to be paid in the event that it recovered funds from third-party defendants in excess of $11 million. *Id.*

Between 2000 and 2007, Compaction served the Carter Day Parties on multiple occasions with a Third-Party Summons and Complaint; the Carter Day Parties failed to respond, and the Court entered default against them. *See generally* ECF No. 1073 (ordering entry of

default against the Carter Day Parties and summarizing relevant procedural history). The Carter Day Parties then moved to set aside the Court's entry of default, ECF No. 1152, and the Court granted their motion, ECF No. 1162. In December 2011, Compaction filed a First Amended Third-Party Complaint against the Carter Day Parties seeking to recover a portion of the costs it agreed to pay USEPA and NJDEP. ECF No. 1164.

That five-count First Amended Third-Party Complaint is the subject of the summary-judgment motions now before the Court. In it, Compaction seeks (i) cost recovery under CERCLA Section 107(a) (Count 1); (ii) contribution under CERCLA Section 113(f) (Count 2); (iii) a declaratory judgment under state and federal law (Count 3); (iv) contribution under the New Jersey Joint Tortfeasors Contribution Act (Count 4); and (v) common-law contribution and indemnification (Count 5). *Id.*

## FACTUAL BACKGROUND

### I. The Site

The Site is an approximately 65-acre parcel of land located on Parker Road in the Chester and Washington Townships, New Jersey. ECF No. 1348-1 at 2. It operated as a landfill from 1948 to 1981. Rosen Cert. Ex. 1. The USEPA placed the Site on the National Priorities List on September 8, 1983. Rosen Cert. Ex. 1.

Defendant Chester Hills, Inc., which is not involved in the instant motions, owned and operated the Site from 1948 until September 1978, when ownership passed to CFC. *Id.* CFC then owned the Site until it filed a bankruptcy petition in 1981; the parties dispute whether CFC's ownership terminated upon its bankruptcy-petition filing. *Id.*; ECF No. 1347-1 at 2. In November 1981, the Site closed. Rosen Cert. Ex. 2. By agreement with CFC, Compaction conducted operations at the Site from the time of CFC's 1978 purchase until the Site's closure in

3

1981. *Id.* Exs. 2, 6. The parties dispute whether Compaction was the exclusive operator of the Site during this time period. ECF No. 1347-1 at 3.

## II.   Bankruptcy Proceedings

### a.   CEA & CDI

CEA was a New York corporation and filed for Chapter 11 bankruptcy protection on October 20, 1980, listing Compaction-CT, the NJDEP, and others as unsecured creditors. Rosen Cert. Exs. 8, 9. A bar date for all claims was set for October 29, 1982. *Id.* Ex. 10. The parties dispute whether CEA also listed the USEPA as an unsecured creditor. ECF No. 1347-1 at 4.

During CEA's bankruptcy, Compaction-CT filed a proof of claim for approximately $200,000. Rosen Cert. Ex. 11. The bankruptcy-court judge expunged that claim on March 11, 1986. *Id.* Ex. 12. The NJDEP also filed a proof of claim for $5 million arising out of "liability [for] the costs of closure of the sanitary landfills operated by the debtor" at the Combe Fill North and South sites. Rosen Cert. Ex. 13. The court disallowed that claim on July 7, 1983. *Id.* Ex. 14. The USEPA never filed a claim against CEA. *Id.* Ex. 11. On December 21, 1983, the court approved CEA's reorganization plan, under which CEA amended its certificate of incorporation to, among other things, change its name to Carter Day Industries, Inc. *Id.* Exs. 15, 16.

On May 30, 1986, CEA initiated an adversary proceeding against the USEPA and the NJDEP in its bankruptcy action. Rosen Cert. Ex. 10. In it, CEA noted that the NJDEP had already settled its $5 million claim against CFC for $50,000; that the NJDEP's identical claim against CEA had been disallowed; that the USEPA had also settled with CFC for $50,000; and that the USEPA continued to assert that it had a right to pursue a claim against CEA, too. *Id.* CEA sought a judgment declaring that the NJDEP's and USEPA's claims against it "arising from the Combe Fill landfill sites" were discharged in bankruptcy, and enjoining them from pursuing

any further claims. *Id.* The court dismissed the action against the USEPA as unripe, and the Second Circuit affirmed, observing that the USEPA had simply named CEA as a potentially responsible party ("PRP"), and evidently had not determined whether to bring a CERCLA action against CEA. *In re Combustion Equip. Assocs., Inc.*, 838 F.2d 35 (1988).

CEA proceeded against the NJDEP, and in November 1991, the bankruptcy judge approved a settlement agreement between CEA and the NJDEP. Rosen Cert. Ex. 17. Under the terms of the settlement, "all claims of NJDEP against Carter Day with respect to the Combe Fill sites [were] discharged." *Id.*

>b. CFC

CFC, a New Jersey company, filed for Chapter 7 bankruptcy on October 15, 1981 and listed Compaction-NJ as a creditor. *Id.* Ex. 20. The bar date for filing claims against CFC was May 3, 1982. *Id.* Ex. 22. Compaction never filed a proof of claim in the CFC bankruptcy proceedings. *Id.* Ex. 23.

The NJDEP filed a proof of claim in April 1982 for approximately $5 million for "liability [for] the costs of closure of the sanitary landfills operated by the debtor[]" at the Combe Fill North and South sites. *Id.* Ex. 24. That claim was nearly identical to the claim the NJDEP filed in CEA's bankruptcy proceedings. *See id.* Ex. 13. The parties reduced and settled the NJDEP's claim for $50,000 in a January 17, 1984 order of the bankruptcy-court judge. *Id.* Ex. 25.

On January 22, 1986, the USEPA filed an Application for Reimbursement of Administrative Expenses in the CFC bankruptcy, claiming costs for CERCLA response actions at the Site. *Id.* Ex. 26. By a June 4, 1986 order of the bankruptcy-court judge, the parties reduced and settled the USEPA's claim for $50,000. *Id.* Ex. 27.

### III. Compaction's Settlement with the NJDEP and USEPA

In 2009, a number of defendants in this litigation entered into a consent decree with the USEPA and NJDEP. *Id.* Ex. 31. That settlement included $69 million of past response costs at the Site, approximately $3.2 million for natural resource damages, and the purchase of an annuity for future response costs totaling $27 million. *Id.* at 16. Compaction paid $11 million as its share of those settlement costs. *Id.* at 17. In addition, Compaction voluntarily accepted an additional judgment of $26 million, to be paid only if it is able to recover an amount exceeding $11 million from the Carter Day Parties. *Id.* Ex. 33.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130–31 (3d Cir. 1995).

Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott*, 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. The Carter Day Parties' Motion for Summary Judgment

    a. *Compaction cannot assert a Section 107 cost-recovery claim under CERCLA.*

Two CERCLA provisions allow PRPs to recover clean-up costs at a polluted site: Section 107(a) cost-recovery claims, and Section 113(f) contributions claims. Those provisions are located at 42 U.S.C. §§ 9607(a) and 9613(f). Compaction asserts claims under both Sections 107(a) and 113(f).

Section 107(a) creates a joint-and-several liability scheme. It provides that PRPs are liable for "any . . . necessary costs of response incurred by" the government or "by any other

person" consistent with CERCLA. 42 U.S.C. § 9607(a)(4)(A)–(B). Under Section 113(f), a PRP can seek contribution from another PRP during or after a CERCLA suit brought against it, *see* 42 U.S.C. § 9613(f)(1), or it can seek contribution from another PRP after reaching a judicially approved settlement with the United States or an individual state, *see id.* § 9613(f)(3)(B). Section 113 "provides two express avenues for contribution: § 113(f)(1) ('during or following' specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State)." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004).

The Supreme Court has explained that "the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances . . . . Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under . . . § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs." *United States v. Atl. Research Corp.*, 552 U.S. 128, 139 (2007).

The Carter Day Parties argue that they should be granted summary judgment on Count 1 because "PRPs who have settled their liability with the government"—like Compaction—"do not have any Section 107(a) claims for costs incurred pursuant to a consent decree in a CERCLA lawsuit and are thus limited to a Section 113(f) contribution claim." ECF No. 1341-2 at 19. They contend that controlling Third Circuit precedent precludes settling PRPs from pursuing Section 107(a) cost-recovery claims. *Id.* (citing *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204 (3d Cir. 2010)). Compaction replies that it "incurred the $26 million [judgment] voluntarily" and can therefore seek to recover those "response costs by way of Section 107 of CERCLA." ECF No. 1347 at 26. In doing so, Compaction attempts to draw a distinction

between the $11 million that it is obligated to pay under the Consent Decree regardless of whether the Carter Day Parties must reimburse it, and the additional $26 million contingent judgment it will pay if its recovery from the Carter Day Parties exceeds $11 million.

Under established case law, Compaction is limited to claims under Section 113(f). The Supreme Court in *Atlantic Research* observed that a PRP may incur clean-up costs in at least three different ways: it could incur those costs voluntarily and pre-suit; it could reimburse the costs of another party; or it could "sustain expenses pursuant to a consent decree following a suit." *Atl. Research*, 552 U.S. at 139 n.6. The *Atlantic Research* court observed that voluntary clean-up costs incurred pre-suit "are recoverable only by way of § 107(a)(4)(B)," and that "costs of reimbursement to another person pursuant to a . . . settlement are recoverable only under § 113(f)." *Id.* It held open the question whether direct clean-up expenses incurred by a PRP under a post-suit consent decree are recoverable under Section 107, Section 113, or both. *Id.*

The Third Circuit answered that question in *Agere Systems*, holding that third-party plaintiffs who have reached a settlement agreement under which they are obligated to perform clean-up work are limited to Section 113(f) claims and "do not have any § 107(a) claims for costs incurred pursuant to consent decrees in a CERCLA suit." *Agere Sys.*, 602 F.3d at 229; *see also Hobart Co. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 768 (6th Cir. 2014) (citing *Agere Systems* and noting that "[e]very one of our sister circuits to reach this issue has held that §§ 107(a)(4)(B) and 113(f)(3)(B) provide mutually exclusive remedies").

Compaction's attempt to side-step *Atlantic Research* and *Agere Systems* by characterizing its $26 million contingent judgment as "voluntary" proves too much. If paid, those expenditures will be made under Compaction's consent judgment with plaintiffs, the United States and State of New Jersey, which reimburses those plaintiffs for past response costs, natural-resource

9

damage, and expected future remediation costs. *See* ECF No. 1128 at 10–11 (consent judgment).

Reimbursements are not costs incurred at a PRP's own initiative, and fall squarely within the

category of costs that the Supreme Court noted "are recoverable only under § 113(f)." *Atl.*

*Research*, 552 U.S. at 139 n.6. While it is undoubtedly true that a party's entry into any such

settlement agreement is in some sense voluntary, costs "voluntarily incurred" in the context of a

Section 107(a) cost-recovery suit mean costs incurred pre-suit. *See Agere Sys.*, 602 F.3d at 227

(finding that costs were not "'incurred voluntarily,' because the parties were in fact sued by the

EPA" before agreeing to incur those costs under a consent decree); *Atlantic Research Corp.*, 551

U.S. at 139 (noting that Section 107 "does not create a right to contribution" because "[w]hen a

party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs

of response"). Both Compaction's $11 million judgment and its $26 million contingent

judgment are the result of post-lawsuit negotiations; neither is voluntary, and neither is

recoverable under Section 107(a).

The Carter Day Parties' motion for summary judgment on Count 1 is granted because the

only CERCLA claim available to Compaction is one for contribution under Section 113(f).

> b. *Whether Compaction's contribution claim was discharged in CEA's reorganization is a triable issue of fact.*

The Carter Day Parties argue that all of Compaction's claims were either discharged or

resolved by CEA's and CFC's bankruptcy proceedings. ECF No. 1341-2 at 22–35. CEA

reorganized under Chapter 11 and emerged as CDI. *Id.* at 6–7. According to the Carter Day

Parties, that December 1983 reorganization plan "provided for a discharge and release of all

claims with no exception or reservation made for future environmental claims," and also

"permanently restrained and impaired all creditors or other entities" from pursuing CEA or CDI.

*Id.* at 7. CFC filed for Chapter 7 bankruptcy in October 1981, and the matter closed in October

1989. *Id.* at 8–10.

> i. The July 31, 2017 Stipulation

As an initial matter, Compaction contends that the Carter Day Parties' bankruptcy

proceedings and reorganization plan do not preclude Compaction from obtaining a judgment

against them for use in collecting against their insurers. ECF No. 1347 at 15. This is because, in

a July 31, 2017 "Joint Stipulation of Facts," the parties agreed that

> at the time that the court finds that the Carter Day Parties are defunct and/or
> insolvent or that the subject claims are within the scope of a discharge in
> bankruptcy, the Carter Day Parties may not assert the bankruptcy defenses
> to preclude Compaction from obtaining a judgment against the Carter Day
> Parties for use in attempting to recover against any insurers who have issued
> liability insurance policies to the Carter Day Parties[.]

ECF No. 1336 at 2. Compaction argues that "the conditions set forth in the stipulation have been

satisfied"—i.e., the Carter Day Parties are "defunct and/or insolvent"—and the Carter Day

Parties cannot now assert the bankruptcy defenses they waived by stipulation. ECF No. 1347 at

16.

The Carter Day Parties reply that while Compaction may pursue claims against the Carter

Day Parties' insurers under Section 524(e) of the Bankruptcy Code, that does not absolve

Compaction of first proving that the Carter Day Parties are liable for those claims. ECF No.

1354 at 19. To prove that the Carter Day Parties are liable, in turn, requires a showing that its

bankruptcy defenses do not apply.

The Carter Day Parties are not precluded from asserting their bankruptcy defenses in this

action. The July 31, 2017 stipulation envisions that the Court will make a determination

regarding whether the bankruptcy defenses apply in the first instance; if the Court finds that they

do, then the stipulation purports to preclude the Carter Day Parties from asserting those defenses in any action by Compaction against insurers.

      ii.  CEA and CDI

Regarding CEA and CDI, the Carter Day Parties argue that CEA's reorganization discharged all claims. They contend that CEA filed for Chapter 11 bankruptcy protection in October 1980; that the court set an October 29, 1982 bar date for all claims; that CEA listed Compaction-CT as a creditor; that Compaction-CT received notice of the bar date; and that Compaction filed a proof of claim that was later expunged. ECF No. 1341-2 at 23. When, post-reorganization, CEA became CDI, the order confirming that reorganization plan "'permanently restrained and impaired' all creditors or other entities from commencing or continuing any action to collect a debt or obligation from CEA/CDI." *Id.* Because Compaction's current contribution claims arose and were not asserted before the bar date, the Carter Day Parties contend that they were discharged by that order.

Compaction responds that its contribution claim against CEA is not barred because those claims had not yet arisen when the bankruptcy court approved CEA's reorganization plan, ECF No. 1347 at 29, and makes several related arguments in support of this contention.[1] Compaction's first contention is somewhat unclear; it appears to argue that because CEA failed to give the EPA notice of its bankruptcy proceedings, and because Compaction's current action derives from an EPA action against it for clean-up costs for which CEA bears responsibility, neither Compaction nor the EPA could have asserted a pre-organization claim against CEA. *Id.* at 29–30. It later adds that "this claim did not and could not exist until the EPA first pursued

---

[1]     Compaction also argues that its claims are not barred because (1) CEA only notified Compaction-CT, and not Compaction-NJ, of its bankruptcy; and (2) Bankruptcy Code Section 502(e)(1)(B) does not apply to Section 107 claims. ECF No. 1347 at 34. Given the Court's analysis of Compaction's other arguments, it need not reach these issues.

Compaction—the EPA's claim was not barred because it was not ripe and, therefore, Compaction's claim (which arose once the EPA pursued its contribution claims) was not ripe either." *Id.* at 34. Separately, Compaction asserts that its contribution claim cannot be barred because it is based on the so-called SARA amendments to CERCLA, which Congress enacted three years after CEA's reorganization plan. *Id.* at 31–32. The Court will address these arguments together.

Section 1141 of the bankruptcy code provides that "the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation . . . ." 11 U.S.C. § 1141(d)(1). Under Section 524, discharge "(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged . . . [and] (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a).

The Third Circuit's analysis in *In re Reading*, 115 F.3d 1111 (1997), is instructive here. There, the USEPA had ordered certain PRPs, including Conrail, to remediate a contaminated site. *Id.* Conrail sued the Reading Company, as successor to the Reading Railroad, for contribution under CERCLA Section 113(f). *Id.* at 1116. A bankruptcy court approved the Reading Railroad's bankruptcy plan in May 1980; at that point, Congress had passed CERCLA, but the SARA amendments, which introduced Section 113 contribution claims, did not yet exist. *Id.* at 1115. Because Conrail's Section 113(f) cause of action did not exist at the time of Reading's reorganization, the court held that Conrail's claim was not discharged. *Id.* at 1123. Likewise, because Compaction's Section 113(f) contribution claim did not exist at the time of CEA's reorganization, it was not discharged.

13

But, as in *Reading*, that is not the end of the analysis. In *Reading*, because Conrail's contribution claim rested on its and Reading's liability to the USEPA under CERCLA, the court went on to consider whether the USEPA's CERCLA claim (from which Conrail's own claim derived) was discharged in Reading's reorganization. *Id.* After analyzing the nature of Section 113(f) claims, the court concluded that "Reading's liability to Conrail depend[ed] on Reading's liability to the United States." *Id.* at 1124. That, in turn, required assessing whether Reading's reorganization barred the USEPA's claim against it. *Id.* at 1125. Because "all four CERCLA elements making up the United States's [Section 107(a)] claim against Reading" existed at the time of Reading's reorganization, its claim had accrued and was barred by the reorganization. *Id.* Because Reading's reorganization discharged the USEPA's Section 107(a) claim, it also discharged Conrail's derivative Section 113(f) claim. *Id.*

Here, too, the USEPA had a viable CERCLA claim by the time CEA's reorganization plan became effective. The four elements of a Section 107(a) claim are: (i) the defendant falls within one of the four categories of responsible parties; (ii) the hazardous substances are disposed at a facility; (iii) there is a release or threatened release of hazardous substances from the facility into the environment; (iv) the release causes the incurrence of response costs. 42 U.S.C. § 9607; *see In re Reading*, 115 F.3d at 1118. The parties do not dispute that the first three elements of the claim were satisfied as of CEA's December 1983 reorganization plan confirmation.

The record makes clear that the fourth element was satisfied too. Government action that qualifies as a "removal action" under CERCLA is recoverable under Section 107. *See United States v. Rohn & Haas*, 2 F.3d 1265, 1274–75 (3d Cir. 1993). A "removal action" includes "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release

of hazardous substances . . . ." 42 U.S.C. § 9601(23). According to a January 1986 Application

for Reimbursement of Administrative Expenses that the USEPA filed in CFC's bankruptcy-court

proceedings, the USEPA began incurring response costs as early as April 1981, when it took

water samples from monitoring wells at the Site. Rosen Cert. Ex. 26 at CFN 002045–46. The

USEPA thus incurred response costs by the time of CEA's reorganization. *See U.S. Virgin*

*Islands Dept. of Planning and Nat. Res. v. St. Croix Renaissance Group, LLLP*, 527 Fed. App'x

212, 214 (3d Cir. 2013) (noting that water sampling and analysis costs qualify as response costs).

Additionally, by November 1983 the USEPA had "entered into a cooperative agreement with

NJDEP whereby the NJDEP was authorized to use federal money to conduct a Remedial

Investigation and Feasibility Study" at the Site; under that agreement, the USEPA pledged

$550,000 of federal Superfund money. Rosen Cert. Ex. 26 at CFN 002046–47. An affidavit

accompanying that application noted that USEPA contractors had completed a "Remedial Action

Master Plan" for the Site by July 1983. *Id.* at CFN0020055.

   Having found that the USEPA's CERCLA claim against CEA accrued by the bar date

and the date of CEA's reorganization, the Court turns to the question whether the USEPA had

sufficient notice of the CEA's bankruptcy proceedings such that CEA's reorganization

discharged the claim.[2] A discharge in bankruptcy does not apply to any debt not listed in the

debtor's schedule of debts unless the creditor "had notice or actual knowledge" of the bankruptcy

proceeding in time to make a timely filing in that proceeding. 11 U.S.C. § 523(a)(3)(A).

   This is not the first time that the USEPA's awareness of CEA's bankruptcy proceedings

has been the subject of judicial scrutiny. After CEA's reorganization, CDI initiated a

---

[2]     Because the Court finds that the USEPA's claim accrued before CEA's reorganization, it need not address
the Carter Day Parties' contention that Compaction's contribution claim is barred by Section 502(e)(1)(B)'s
contingent-claim provision.

bankruptcy-court action seeking a declaratory judgment against the USEPA regarding CEA's

CERCLA liability at the Combe Fill North and South sites. In *In re Combustion Equipment*

*Associates, Inc.*, 838 F.2d 35 (1988), the Second Circuit held that the matter was not ripe for

review because the USEPA had not yet decided whether to pursue a CERCLA action against

CEA or CDI. In so deciding, the court noted that "[t]he EPA's claim was apparently not

scheduled on [CEA's] list of liabilities and the EPA therefore did not receive required formal

notices in the bankruptcy proceeding, although it may have known about it. An issue in any

attempt by [CEA] to discharge its CERCLA liability is whether the EPA had enough notice of

what was happening in the bankruptcy proceeding to make barring its claim fair." *Id.* at 40.

    The Carter Day Parties contend that the Second Circuit's discussion of the USEPA's

notice is dicta, and that the court declined to express a view on the question. True enough. But

the Carter Day Parties fail to point to evidence in the record that would satisfy this Court that the

USEPA "had notice or actual knowledge" of CEA's bankruptcy proceedings in time to make a

timely filing. 11 U.S.C. § 523(a)(3)(A). Whether the USEPA had such notice remains an

unanswered question of fact that is material to determining whether CEA's reorganization

discharged the USEPA's Section 107 CERCLA claim and, therefore, whether Compaction's

derivative Section 113(f) claim may proceed. As to CEA and CDI, the Court cannot grant

summary judgment on the Carter Day Parties' bankruptcy defense.

        iii.  The Court need not decide whether CFC's bankruptcy discharged
             Compaction's claims.

    The Carter Day Parties next argue that CFC's bankruptcy resolved all of Compaction's

claims. They note that Compaction-NJ, the USEPA, and the NJDEP were all notified of CFC's

bankruptcy and listed as creditors; that the USEPA and NJDEP asserted claims during CFC's

bankruptcy proceedings; and that the proceedings closed on October 2, 1989. ECF No. 1341-2 at

31. When CFC's bankruptcy proceedings closed, CFC became defunct and, as of that point in time, Compaction was barred from pursuing a cause of action against it. *Id.* at 32–33. The Carter Day Parties contend that because CFC identified Compaction-NJ as an unsecured creditor and provided Compaction-NJ with notice of the bar date, Compaction's failure to file a timely proof of claim in CFC's bankruptcy proceedings results in its claims being discharged. *Id.* at 33. They also argue that Section 502(e)'s provision disallowing contingent claims for contribution bars Compaction's claims. *Id.* at 34–35.

In its opposition, Compaction chose not to address the Carter Day Parties' CFC-related bankruptcy defenses. *See generally* ECF No. 1347. It appears that Compaction's decision is based on its concession that CFC settled its CERCLA liability with both the USEPA and NJDEP, and is thus entitled to contribution protection under CERCLA Section 113(f)(2). *See id.* at 23–24 ("Compaction concedes that the Carter Day Parties obtained contribution protection under Section 113 of CERCLA for matters addressed in their three settlements."). Given Compaction's concession regarding CFC's contribution-protection defense, the Court need not consider CFC's bankruptcy defenses.

      c. *The Carter Day Parties are entitled to contribution protection under CERCLA Section 113(f)(2) as a matter of law.*

The Carter Day Parties assert that they should be granted summary judgment on Count 2, which seeks contribution under CERCLA Section 113(f), because CERCLA bars contribution claims against settling parties. ECF No. 1341-2 at 15–17. That provision states: "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). A settlement will thus qualify for contribution protection if

(i) it was "administrative[ly] or judicially approved" and (ii) Compaction's current demand for contribution is for the same "matters addressed in the settlement."

Regarding the "matters addressed" prong, "[t]he analysis adopted by federal courts to determine whether a contribution action is barred by a prior consent decree or settlement is to consider whether the subject matter of the settlement and the contribution action are the same." *ASARCO LLC v. Shore Terminals LLC*, Civ. No. 11-1384, 2012 WL 2050253 at *7 (N.D. Cal. June 6, 2012). Settlement agreements often contain an explicit statement of the "matters" covered by them. *See, e.g.*, *Alcan Aluminum Corp. v. Butler Aviation-Boston, Inc.*, Civ. No. 02-0562, 2003 WL 22169273 at *4 (M.D. Pa. Sept. 19, 2003). Where they do not, courts turn to the text of the agreement as a starting point for interpreting the scope of the matters addressed. *See United States v. Charter Intern. Oil Co.*, 83 F.3d 510, 517–18 (1st Cir. 1996). When interpreting such an agreement, courts look to various factors, including but not limited to "the particular location, time frame, hazardous substances, and clean-up costs covered by the agreement." *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 766 (7th Cir. 1994). The relevance of these and other factors "will vary with the facts of the case." *Id.*

i. CFC's Settlements with USEPA and NJDEP.

The Carter Day Parties first argue that CFC's bankruptcy-court settlements with the NJDEP and USEPA in 1984 and 1986, respectively, entitle it to Section 113(f)(2) contribution protection. ECF No. 1341-2 at 17. In its opposition, Compaction admits that it cannot maintain a Section 113(f) contribution claim against CFC for the matters addressed in those settlements and does not argue that any of the contributions it seeks from the Carter Day Parties are for matters falling outside the scope of CFC's settlements. ECF No. 1347 at 23–24; *see also* ECF

No. 1351 (Compaction admitting that "CFC resolved its CERCLA liability by settlements").

The Court will therefore grant summary judgment to CFC on Compaction's contribution claim.

### ii. The CEA-NJDEP Settlement.

Because CDI, as successor to CEA, entered into a stipulation of settlement with the

NJDEP, and because the Bankruptcy Court for the Southern District of New York so-ordered

that stipulation on November 22, 1991, the Carter Day Parties assert that Compaction's

contribution claim against CEA and CDI is barred. ECF No. 1341-2 at 16. Compaction

acknowledges that it cannot assert a contribution claim against CEA and CDI for that portion of

the $11 million judgment against it that reimburses the NJDEP, which amounts to approximately

$1.5 million. *Id.* at 23. But Compaction contends that CEA and CDI find only limited shelter

under CERCLA's contribution-protection provision because those entities settled only with the

NJDEP, and not the USEPA, to which Compaction claims CEA and CDI failed to "give notice,

to advise the Bankruptcy Court of CEA/CDI's purported intent to resolve the USEPA's rights, or

to list them as a potential claimant . . . ." *Id.* at 20–21. Compaction claims that it can seek

contribution from CEA and CDI for the remaining $9.5 million, which it says "include[s]

reimbursements for EPA for response costs incurred, as well as for natural resource damages."

*Id.*

The first question before the Court, then, is whether a party's settlement with a state

environmental regulator can qualify it for Section 113(f)(2) contribution protection or whether,

as Compaction asserts, full protection is only available when the party settles with the EPA too.

Section 113(f)(2) bars contribution actions against any "person who has resolved its liability to

the United States *or* a State in a[] . . . judicially approved settlement . . . ." 42 U.S.C. §

9613(f)(2) (emphasis added). The plain language of that provision—specifically, its use of the

disjunctive "or"—indicates that CDI's judicially approved settlement with NJDEP is sufficient to trigger the Section 113(f) bar. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction our analysis begins with the language of the statute.") (internal quotation marks omitted).

Buttressing that interpretation is the Third Circuit's holding in *Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131 (3d Cir. 2013). In that case, the Third Circuit considered whether a PRP's settlement with a state environmental regulator under a state statute qualified as a "resol[ution] [of] its liability to the United States or a State . . . for some or all of the costs of such action in an administrative or judicially approved settlement" under Section 113(f)(3)(B), such that it could pursue a Section 113 contribution action against other PRPs. *Id.* The *Trinity* court held that Section 113(f)(3)(B) "does not require that a party have settled its liability under CERCLA in particular to be eligible for contribution." *Id.* at 136. Given that the operative language in Sections 113(f)(2) and 113(f)(3)(B) is virtually identical—both govern the rights of "[a] person who has resolved its liability to the United States or a State" without reference to the precise statutory source (i.e., state or federal) of that liability—the *Trinity* court's interpretation applies with equal force here. In other words, just as a state-law settlement triggers the right to seek contribution under Section 113(f)(3)(B), it also triggers the right to be shielded from others' contribution actions under Section 113(f)(2), assuming it meets the statutory requirements.

Having determined that a PRP may qualify for Section 113(f)(2)'s contribution protection by settling with a state regulator, the Court turns to the question whether contribution protection is appropriate in this case. Section 113(f)(2) provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement

shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). CDI's NJDEP settlement will qualify for contribution protection if (i) its November 1991 settlement was "administrative[ly] or judicially approved" and (ii) Compaction's current demand for contribution is for the same "matters addressed in the [1991] settlement."

### 1. "Judicially Approved"

The Carter Day Parties contend that because the November 1991 settlement "was so ordered by the Bankruptcy Court for the Southern District of New York," it qualifies as a "judicially approved settlement" under Section 113(f)(2). ECF No. 1341-2 at 16. Compaction does not dispute that the settlement was judicially approved.

### 2. "Matters Addressed"

CDI's November 1991 settlement agreement with the NJDEP does not contain an explicit statement of "matters addressed." It notes that CDI filed a bankruptcy-court complaint against the NJDEP "seeking declaratory and injunctive relief to the effect that (1) [CDI] was discharged by confirmation of CEA's reorganization plan from all liabilities to NJDEP relating to or arising from the Combe Fill North and Combe Fill South landfills . . . and (2) the prior disallowance of the NJDEP's proof of claim in CEA's Chapter 11 case had res judicata effect and barred the NJDEP's claims . . . ." Rosen Ex. 17. According to the agreement, CDI "and NJDEP have agreed to a settlement of (a) NJDEP's claims against [CDI] and (b) [CDI's] present action against the NJDEP." *Id.* It goes on to provide that "all claims of [the] NJDEP against [CDI] with respect to the Combe Fill sites have been discharged," and that the "NJDEP is permanently enjoined from pursuing any claims against [CDI] arising out of or related to the Combe Fill sites." *Id.*

Although it does not contain an explicit statement of "matters addressed," the November 1991 settlement agreement is worded broadly. It discharges "all claims of [the NJDEP] against [CDI]" regarding the Site, and "permanently enjoin[s]" the NJDEP from pursuing claims "arising out of or related to" the Site. *Id.* The agreement contains no time limitation; by its terms, it applies to both past and any possible future claims at the Site.

Compaction's sole contention relating to the "matters addressed" by the 1991 NJDEP settlement is that they do not include any claims by the USEPA. ECF No. 1347 at 21–24. Compaction does not dispute, for example, that "the Combe Fill sites" includes Combe Fill South, the site at issue in this case. Moreover, Compaction appears to have recognized that CDI's 1991 settlement with the NJDEP covered the same subject matter as the instant lawsuit— in the consent order, the USEPA, NJDEP, and Compaction specifically noted that "[t]he State Plaintiffs resolved their direct claims for relief against CDI (as set forth in the November 18, 1991 Order), in whole or in part, in the Order dated November 18, 1991." ECF No. 1128. The record also shows that the NJDEP expended response costs at the Site under a cooperative agreement with the USEPA. *See* Rosen Cert. Ex. 26 at CFN 0020046–47. Those costs, among others, are included in the amount the NJDEP sought in this case from Compaction. Am. Third Party Compl., ECF No. 1164 at ¶ 14.

CDI's November 1991 settlement agreement covered all claims by the NJDEP "arising out of or related to" the entire Site at issue in Compaction's Amended Third Party Complaint, without geographic, temporal, or other relevant limitation. Under any fair reading, the agreement must include the claims for environmental clean-up costs that Compaction agreed to reimburse to the NJDEP. Under CERCLA, settling parties receive the same contribution protection when they settle with "a State" as when they settle with "the United States." 42

U.S.C. § 9613(f)(2). Compaction is thus precluded under Section 113(f)(2) from seeking contribution from CEA or CDI for those costs. *See United States v. Southeastern Pennsylvania Transp. Authority*, 235 F.3d 817, 823 (3d Cir. 2000) (determining from parties' settlement-agreement statement that they "'wish to finally conclude . . . all claims and causes of action set forth' in this litigation" involving an entire Superfund site that "it would be reasonable to conclude that the matters [the agreement] addresses are matters related to the entire Site, even without an explicit definition of matters addressed"); *Transtech Indus., Inc. v. A&Z Septic Clean*, 798 F.Supp. 1079, 1088–89 (D.N.J. 1992) (denying Section 113(f)(2) settlement protection where settlement agreement only covered costs incurred during a specified time period and explicitly left open later actions for future costs).

Though it may seem harsh that CEA and CDI avoid contributing to Compaction's $11 million settlement by virtue of a $50,000 bankruptcy-court settlement, Congress enacted Section 113(f)(2) to encourage such early settlements: "[S]ettling PRPs gain protection from contribution, enjoy potentially favorable settlement terms, and retain the ability to seek contribution from other defendants. In contrast, non-settling PRPs are barred from seeking contribution from the settling parties and thereby face potentially disproportionate liability." *Raytheon Constructors, Inc. v. ASARCO Inc.*, Civ. No. 96-2072, 2000 WL 1635482, *29 (D. Colo. March 31, 2000) (*citing Reading Company*, 115 F.3d at 1119).

The Court grants summary judgment to CEA and CDI on Count 2.

    d.  *CERCLA preempts Compaction's state statutory and common-law claims*.

Count 4 seeks contribution under the New Jersey Joint Tortfeasors Contribution Act, and Count 5 seeks common-law contribution and indemnification.

The New Jersey Joint Tortfeasors Contribution Act ("JTCA"), N.J. Stat. Ann. § 2A: 53A-1 *et seq.* This statute applies when "an injury or damage is suffered . . . as a result of the wrongful act, neglect or default of joint tortfeasors and one of the joint tortfeasors pays more than his pro rata share of the damage." *Interfaith Comm. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 870 (D.N.J. 2003) (internal quotations and citation omitted). The party claiming contribution must prove that the party from which he seeks contribution is a "joint tortfeaser," *id.* at 871, which the statute defines as "two or more persons jointly or severally liable in tort for the same injury to person or property." N.J. Stat. Ann. § 2A:5 3A-1. New Jersey law allows for indemnification (i) when it is provided for by contract, and (ii) when the parties' legal relationship creates an implied right to indemnification; "[i]n either case a party is entitled to indemnification only if he or she is without fault and his or her liability is purely constructive, secondary or vicarious." *Allied Corp. v. Frola*, 730 F.Supp. 626, 639 (D.N.J. 1990).

The Carter Day Parties contend that Counts 4 and 5 must be dismissed because "CERCLA precludes contribution by a settling party to non-settling parties," under Section 113(f)(2), and "[t]o the extent that New Jersey state or common law conflicts, such law is preempted by CERCLA." ECF No. 1341-2 at 20. Compaction replies that its state and common-law claims are not in conflict with CERCLA because, as it argued regarding CEA and CDI's contribution-protection defense, those parties never settled with the USEPA, and thus CERCLA does not bar their federal contribution claims. ECF No. 1347 at 26–29.

Federal law will preempt state law where "it actually conflicts with federal law. Such a conflict occurs either because compliance with both federal and state regulations is a physical impossibility, or because the state law stands as an obstacle to the accomplishment and execution

of the full purposes and objectives of Congress." *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987) (citations and quotations omitted).

The Third Circuit has already held that CERCLA section 113(f) preempts common-law contribution claims because they "obstruct the intent of Congress" in passing CERCLA. *See In re Reading*, 115 F.3d at 1117. The *Reading* court noted that "when Congress expressly created a statutory right of contribution in CERCLA § 113(f), it made that remedy a part of an elaborate settlement scheme aimed at the efficient resolution of environmental disputes. Permitting independent common law remedies would create a path around the statutory settlement scheme, raising an obstacle to the intent of Congress." *Id.*

*In re Reading*'s holding precludes Compaction's common-law claims. As Compaction concedes in its briefing, CFC settled the USEPA's and NJDEP's Site-related claims and earned Section 113(f)(2) contribution protection. Further, this Court determined that CEA and CDI are entitled to full contribution protection by virtue of CDI's November 1991 settlement with the NJDEP. Under CERCLA's "elaborate settlement scheme," therefore, the Carter Day Parties are shielded from Compaction's federal contribution action; to permit Compaction to accomplish under a state statute or common law what it is prohibited from accomplishing under federal law would impermissibly "create a path around the statutory settlement scheme, raising an obstacle to the intent of Congress." *Id.*; *see Allied Corp. v. Frola*, 730 F. Supp. 626, 638 (D.N.J. 1990) (holding that CERCLA preempted third-party plaintiffs' JTCA contribution claim regarding matters addressed in third-party defendants' settlement with the USEPA); *Allied Corp. v. Frola*, Civ. No. 87-462, 1993 WL 388970, at *10–11 (D.N.J. Sept. 21, 1993) (holding that CERCLA preempted moving party's indemnification claim regarding the same funds sought in its CERCLA contribution action).

The Court grants summary judgment to the Carter Day Parties on Counts 4 and 5.

    e. *Compaction's declaratory-judgment claim fails*.

In Count 3, Compaction seeks a judgment declaring that the Carter Day Parties are liable under CERCLA Sections 107 and 113 for response costs. Am. Compl. ¶ 35. Because the Court grants summary judgment to the Carter Day Parties on all other counts, it will also grant summary judgment to the Carter Day Parties on Count 3. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 496 (D.N.J. 2002) (noting declaratory judgment under CERCLA not available where all CERCLA claims dismissed).

## II.   Compaction's Cross-Motion and Motion for Partial Summary Judgment

In its opposition to the Carter Day Parties' motion for summary judgment, Compaction moves for partial summary judgment, seeking rulings that (i) CEA and CDI cannot assert a defense under Section 113(f)(2) because they never settled with the USEPA; and (ii) CEA's reorganization does not bar Compaction's claims. ECF No. 1347. For the reasons already stated, this motion is denied.

Separately, Compaction moves for partial summary judgment regarding the Carter Day Parties' liability under CERCLA. Because the Court finds that all of Compaction's claims are either barred by CERCLA Section 113(f)(2) or preempted by CERCLA itself, its motion is denied as moot.

## III.   Compaction's Motions for Estoppel and Spoliation Sanctions

On the same day that it moved for partial summary judgment, Compaction filed two additional motions. In the first, it moves for an order that the Carter Day Parties be estopped from contesting "the findings of facts and conclusions of law contained in the Consent Decree

and Consent Judgment . . . ." ECF No. 1343-3 at 30. Because the Court grants summary judgment to the Carter Day Parties on all claims, this motion is denied as moot.

Compaction also moves for sanctions based on the Carter Day Parties' alleged spoliation of evidence. ECF No. 1344-3. Compaction seeks an adverse-inference jury instruction and the striking of certain of the Carter Day Parties' affirmative defenses. *Id.* Because the Court grants summary judgment to the Carter Day Parties on all claims, and because the affirmative defenses that Compaction seeks to strike as a spoliation sanction are unrelated to the defenses on which the Carter Day Parties prevailed in their motion for summary judgment, this motion is denied as moot.

## CONCLUSION

The Carter Day Parties' motion for summary judgment is granted on all counts. Compaction's cross-motion for summary judgment is denied, and its motion for partial summary judgment is denied as moot. Further, its motions for estoppel and spoliation sanctions are denied as moot. An appropriate order follows.

DATE: 23 July 2018

William H. Walls
Senior United States District Court Judge